UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

Present: The Honorable     James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) Order Denying Defendants' Motion to Dismiss for Lack of Personal jurisdiction or Forum Non Conveniens, or alternatively for Arbitration and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

       On July 27, 2012, this Court entered an Order granting Defendant Emirates NBC Bank PJSC's ("the Bank") Motion to Dismiss for Lack of Personal Jurisdiction. (Motion to Dismiss Order, Docket No. 82.) On August 8, 2012, the Court entered a Judgment of Dismissal. (Docket No. 87.) On October 29, 2012, the Court entered an Order granting Plaintiffs InfoSpan, Inc.'s and InfoSpan (Gulf), Inc.'s (collectively, "Plaintiffs") Motion to Alter or Amend the Judgment, vacating the Motion to Dismiss Order and Judgment of Dismissal. (Docket No. 96.) Thus, again before the Court is the Bank's Motion to Dismiss for Lack of Personal Jurisdiction or Forum Non Conveniens. (Mot., Docket No. 47; Mot. Br., Docket No. 31.) Alternatively, the Bank requests that the Court compel arbitration. (Id.) Plaintiffs filed a timely opposition. (Opp. Br., Docket No. 53.)

       On November 12, 2012, the Bank moved to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). (Motion to Dismiss for Lack of Subject Matter Jurisdiction ("SMJ Motion"), Docket No. 98.) Plaintiffs timely replied. (Opposition to SMJ Motion, Docket No. 102.) The parties also filed supplemental briefs. (Plaintiffs' Supplemental Opposition ("Pl. Suppl."), Docket No. 110; Defendant's Supplemental Brief ("Def. Suppl."), Docket No. 109.)

    For the following reasons, the Court **DENIES** the motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

I.    BACKGROUND

      This action arises out of a business relationship between Plaintiffs and the Bank that began in 2007. InfoSpan is a California company that develops and implements technology platforms that allow users to process stored funds using the internet and mobile devices, including bank cards ("Stored Value Cards"), to transmit foreign remittances securely and inexpensively, to make purchases, and to engage in mobile banking. (Compl. ¶ 11, Docket No. 1.) InfoSpan also developed the SpanCash platform, an inexpensive mobile commerce banking service that can be used internationally. (Id. ¶¶ 15, 16.) InfoSpan (Gulf), an affiliate of InfoSpan, is a Cayman Islands corporation with its principal place of business in San Juan Capistrano, California. (Id. ¶¶ 6, 12.) InfoSpan has managed the business operations of InfoSpan (Gulf) since 2006. (Id. ¶ 12.) The Bank is incorporated under the laws of the United Arab Emirates ("UAE") and has its principal place of business there. (Id. ¶ 7.)

      In early 2007, InfoSpan and the Bank began discussing a potential contract to allow the Bank to use the SpanCash technology to distribute Store Value Cards and other mobile banking services. (Id. ¶ 24.) SpanCash would allow the Bank to transfer money around the world and offer banking services in locations where it did not have branches. (Id. ¶ 26.) From January to April 2007, the Bank transmitted due diligence questions to InfoSpan in California and received information in response. (Id. ¶¶ 24–25.) In April 2007, Pishu Ganglani "Ganglani"), a Bank representative, visited InfoSpan's offices in Irvine, California to conduct further due diligence on the SpanCash technology. (Id. ¶ 27.) During his visit, Ganglani performed a test with the SpanCash card that was later demonstrated to Bank executives in Dubai. (Id.) On May 20, 2007, the Bank and InfoSpan (Gulf) entered into a Store Value Card Processing Service and Marketing Agreement (the "Agreement"). (Id. ¶ 29.) Plaintiffs allege that InfoSpan and the Bank exchanged drafts of the Agreement "between California and Dubai." (Id. ¶ 28.)

      Although InfoSpan was not a party to the Agreement, the Agreement called for InfoSpan to provide call center support and to perform authorization, recordkeeping and processing services for transactions initiated through the use of SpanCash technologies. (Id. ¶ 32.) InfoSpan was also required to provide services to facilitate the transfer of funds from banks in the United States to the Store Value Cards issued by the Bank. (Id.) The Bank issued press releases announcing the Agreement with "California-based company, InfoSpan, Inc." (Id. ¶ 43.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 11-1062 JVS (ANx)                                Date  December 7, 2012

Title     InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC

 Plaintiffs allege that the Agreement was an artifice for the Bank's scheme to fraudulently induce InfoSpan to disclose and install its technology on Bank premises and then to steal that technology for the Bank's own gain. (Id. ¶ 2.) As part of that scheme, Plaintiffs allege that the Bank made several misrepresentations to InfoSpan, expressing, *inter alia*, the Bank's continuing desire to work with InfoSpan to implement the SpanCash project. (See e.g., id. ¶¶ 67, 69, 126, 128, 129.) Plaintiffs allege that InfoSpan worked in good faith to integrate its proprietary technology into the Bank's data center, relying on the Bank's representation that it intended to continue the SpanCash project. (Id. ¶¶ 65, 66.) InfoSpan brings the following causes of action against the Bank: (1) misappropriation of trade secrets, Cal. Civ. Code § 3426 *et seq.*; (2) breach of confidence; (3) intentional and negligent misrepresentation; (4) conversion; and (5) violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* through extortion and criminal acts. InfoSpan seeks damages, restitution, and disgorgement.

 InfoSpan (Gulf) alleges the Bank breached the Agreement and breached the implied covenant of good faith and fair dealing. In the Agreement, the Bank covenanted that it would not "circumvent the Agreement by directly or indirectly assisting any third party to develop a product or service using InfoSpan's technology or confidential information" or otherwise "disclose or use" Plaintiffs' confidential information other than for purposes contemplated by the Agreement. (Id. ¶¶ 40–42.) InfoSpan (Gulf) alleges the Bank breached the Agreement by withholding payment, wrongfully terminating the Agreement, misappropriating and using InfoSpan's proprietary information, and marketing SpanCash services on its own in violation of the Agreement. (Id. ¶¶ 58, 62, 76–83.) InfoSpan (Gulf) seeks damages and restitution.

 The Bank previously moved to dismiss based on this Court's lack of personal jurisdiction and forum non conveniens. Alternatively, the Bank sought to enforce the arbitration clause in the Agreement. The Court held a hearing on the motion to dismiss on July 23, 2012. (Docket No. 81.) In its original Motion to Dismiss Order, the Court incorrectly held that it lacked personal jurisdiction over the Bank because "the Bank's alleged intentional acts were not purposely directed at California because the Bank does not compete in California markets." The Court reconsidered that ruling in light of the Ninth Circuit's reasoning regarding the purposeful direction standard, and reversed its order of dismissal. (Docket No. 96.) The Court now addresses the issues previously left unresolved in light of the dismissal, and the Bank's motion to dismiss for lack of personal jurisdiction because InfoSpan (Gulf) and the Bank are both aliens.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

II. LEGAL STANDARDS

    A. **Arbitration Provisions**

An arbitration provision in an international commercial agreement is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which was adopted by Congress in the Federal Arbitration Act ("FAA"). 9 U.S.C. § 201 *et seq.* A court with jurisdiction under the FAA "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. The strong federal policy favoring arbitration applies with equal force to international contracts. Bauhini Corp. v. China Nat'l Mach. & Equip. Import & Export Corp., 819 F.2d 247, 249 (9th Cir. 1987). In the absence of a term specifying where the arbitration is to take place, a district court can order arbitration only within its district. Id. at 250. "[S]ection 206 does not permit a court to designate a foreign forum when the agreement fails to designate a place." Id.

    B. **Subject Matter Jurisdiction**

Dismissal under Rule 12(b)(1) is proper when the plaintiff fails to properly plead subject matter jurisdiction. The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994); Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1223, 1225 (9th Cir. 1989). A jurisdiction attack pursuant to Rule 12(b)(1) may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the challenge is based solely upon the allegations in the complaint (a "facial attack"), the court generally presumes the allegations are true. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); see White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

    C. **Forum Non Conveniens**

A party moving to dismiss based on forum non conveniens bears the burden of showing "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Dole Food Co., 303 F.3d at 1118. A foreign forum is adequate when it provides the plaintiff with a sufficient remedy for his wrong and where defendants are amenable to service of process in that forum. Id. "The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
|---|---|---|---|
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strong favor trial in a foreign country." Id. The private interest factors include (1) ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; and (4) likelihood of a fair trial. Id. at 1119. The public interest factors include (1) court congestion; (2) local interest in resolving the controversy; and (3) preference for having a forum apply a law with which it is familiar. Id. Forum non conveniens is "an exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim." Id. at 1118 (quoting Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000)).

III. DISCUSSION

The Court begins with the premise that, absent other considerations, it has original jurisdiction over InfoSpan's tort claims against the Bank under 28 U.S.C. § 1332(a)(2). If InfoSpan would not be required to arbitrate absent InfoSpan (Gulf)'s involvement in the action, Plaintiffs aver that InfoSpan (Gulf) voluntarily will dismiss its claims under Fed. R. Civ. P. 41(a). The Bank, meanwhile, contends that InfoSpan (Gulf) is an indispensable party under Fed. R. Civ. P. 19 and that its presence would destroy complete diversity. Presumably, the Bank would move to join InfoSpan (Gulf) as a necessary party should InfoSpan (Gulf) voluntarily dismiss its claims. Therefore, the Court first addresses the arbitration question, then addresses whether InfoSpan (Gulf) is a necessary party, and finally addresses whether to dismiss for forum non conveniens.

### A. Arbitration of InfoSpan's Tort Claims

The arbitration provision, Section 13.5 of the Agreement, provides: "Any controversy arising out of, or relating to this Agreement, or the breach thereof, which cannot be resolved pursuant to Section 13.4 above[1] shall be submitted to arbitration per the laws of the United Arab Emirates." (Binhenz Decl., Ex. 1, p. 20.) InfoSpan is a nonsignatory to the Agreement. Plaintiffs argue that InfoSpan's tort claims are not arbitrable because the Bank waived its right to arbitrate by pursuing criminal charges against Laurence Scudder and Farooq Bajway, and/or because its tort claims are independent and not bound by the Agreement. The Bank counters that it has not waived

---

[1] Section 13.4 describes the informal procedures for dispute resolution.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

its right to arbitrate and that agency and equitable estoppel principals justify compelling arbitration of InfoSpan's claims even without InfoSpan (Gulf).

First, the arbitration provision only matters if the Bank has not waived its right to arbitrate. A party arguing waiver of an arbitration provision "bears a heavy burden of proof," which Plaintiffs fail to meet. United States v. Park Place Assocs., Ltd., 563 F.3d 907, 921 (9th Cir. 2009) (quoting Van Ness Townhouses v. Mars Indus. Corp., 862 F.2d 754, 758–59 (9th Cir. 1988)). To demonstrate waiver, a party must show "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id. (quoting Fisher v. A. G. Becker Paribas, Inc., 791 F.2d 691, 694 (9th Cir. 1986)). Plaintiffs contend that the Bank incorporated its contractual claims in the criminal complaint it filed in the UAE. (See Milici Decl., Ex. E.) Although the parties agree that UAE law would allow the Bank to incorporate civil claims into the criminal complaint and seek monetary relief, the Court finds that the Bank did not implicitly waive its right to arbitrate by filing the criminal complaint for fraud against Bajwa and Scudder. On its face, the complaint[2] references the agreement between the parties; alleges that Scudder and Bajwa committed fraud; cites a loss of $1,465,000, which amounts to the payments made by the Bank to InfoSpan (Gulf); and asks for interrogation and production of documents. (Milici Decl., Ex. E.) The complaint, however, expressly reserves the Bank's "right to claim all its civil rights," (id.), strongly implying that the "criminal action was not brought in lieu of arbitration" or designed to also resolve the contractual dispute arising out of the Agreement. Amalgamated Local No. 55 et al. v. Metal and Alloy Div., 396 F. Supp. 667, 670 (W.D.N.Y. 1975).[3] Thus, the Court finds that the Bank's actions

---

[2]The Court recognizes that Plaintiff only has the draft complaint and that the Bank has not produced the filed version, but none of the statements Plaintiffs point to demonstrate that the Bank merged its contractual claims into the criminal complaint.

[3]The cases referenced by Plaintiffs do not counsel otherwise. In Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1477, 1479–80 (2d Cir. 1993), the court focused on the prejudice prong and held that ZwitserLeven waived arbitration because it instigated the preliminary witness hearing to preserve the testimony of witnesses who it could not compel to appear at arbitration hearings to gain an advantage during arbitration, and misled ABN to believe they intended to file a lawsuit. Here, Plaintiffs offer no evidence of comparable motives or actions related to the criminal complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

did not constitute a waiver of the arbitration provision by merging its contractual claims into the criminal proceeding, and therefore the arbitration provision remains enforceable.

Second, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles," which include incorporation by reference, assumption, agency, veil-piercing, and equitable estoppel. Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting Letizia v. Prudential Bache Secs., Inc., 802 F.2d 1185, 1187–88 (9th Cir. 1986); Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Id. (citation omitted). "[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). This principal has generated two lines of cases in the arbitration context. First, "*nonsignatories* have been held to arbitration clauses where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." Comer, 436 F.3d at 1101 (internal quotation marks and citation omitted). Under this standard, the nonsignatory should derive a "direct benefit from the contract" rather than an "indirect benefit." See Thomson-CSF, 64 F.3d at 778. Second, "*signatories* have been required to arbitrate claims brought by nonsignatories at the

---

In United Computer Sys., Inc. v. AT&T, 298 F.3d 756, 765 (9th Cir. 2002), the Court found that the first two prongs of the test were satisfied by the state court complaint because UCS requested a declaratory judgment with respect to the rights and obligations of the parties under the arbitration clause, a jury trial, and $16 million in damages. In concluding that AT&T's waiver argument was unavailing, the court also noted that "[t]he issue of remedy was not raised in the course of litigating the motion to dismiss" and the plaintiff never was "forced to clarify the scope of its requested relief." Id. That same ambiguity as to the scope of the remedy sought through the judicial proceeding is present here, weighing against a finding of waiver.

Finally, as best the Court understands the background in Taft v. Burttram, 254 Ga. 687 (1985), the court there held that the appellees waived their right to compel arbitration because the dispute involved in the criminal case they filed against the appellants was "for all practical purposes . . identical" to the dispute in the civil case. No such substantial overlap exists here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 11-1062 JVS (ANx)                                    Date  December 7, 2012

Title    InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC

nonsignatory's insistence because of the close relationship between the entities involved." Comer, 436 F.3d at 1101 (internal quotation marks and citation omitted). Because the Bank is invoking equitable estoppel against a nonsignatory, only the first line of cases is relevant.

     InfoSpan never agreed to arbitrate. Neither the admitted affiliation between the Plaintiffs nor the fact that InfoSpan's tort claims stem from conduct also related to InfoSpan (Gulf)'s contract claims is sufficient, in itself, to require arbitration under the estoppel theory. See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001) ("[A] signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with the signing party."); Thomson-CSF, 64 F.3d at 779 (determining that a nonsignatory is not estopped even where its claims are "intimately founded in" and "intertwined with the agreement"). InfoSpan also has not "knowingly exploited" the Agreement for a "direct benefit." Thomson-CSF, 64 F.3d at778. In Int'l Paper, the contract between the manufacturer and distributor provided part of the factual foundation for every claim asserted by the buyer against the manufacturer, and the entire case hinged on the buyer's asserted rights under the contract, justifying arbitration. 206 F.3d at 418; accord Deloitte Nordaudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1064 (2d Cir. 1993) (non-signatory's use of mark licensed under agreement required non-signatory to arbitrate under the master agreement); Larson v. Speetjens, 2006 WL 2567873, at *6 (N.D. Cal. Sept. 5, 2006) (non-signatory accepting benefit of legal advice provided under agreement). In contrast, here, InfoSpan's tort claims do not seek enforcement of any contractual obligation between the Bank and InfoSpan (Gulf), and it is not seeking to claim any benefits founded on the Agreement itself. See Comer, 436 F.3d at 1102 (holding that nonsignatory plaintiff in ERISA action, who was participant in employee pension and profit-sharing plan, was not bound to arbitrate where not seeking to enforce rights under a contract between the ERISA plan and its investment advisor). The Court has emphasized that InfoSpan's proprietary rights over SpanCash exist independently of the Agreement and any burdens and benefits it imposed on the parties; the underlying torts are discrete, independent causes of action that do not rely on a breach of contract claim. (See Motion to Dismiss Order, at 8–10.) At best, any benefit InfoSpan derives from the Agreement, such as confidentiality guarantees, is indirect and has not led to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
|---|---|---|---|

| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC |
|---|---|

InfoSpan "exploit[ing] (and thereby assum[ing]) the agreement itself."[4] MAG Portfolio, 268 F.3d at 62. Therefore, InfoSpan is not bound to arbitrate under the principles of equitable estoppel.

 Agency principles also do not justify compelling arbitration. Although the agency theory may justify applying an arbitration clause to a non-signatory, "this is only true when 'a signatory has brought claims against non-signatory agents and the agents then seek to the invoke the arbitration clause against the *signatory*.'" Peterson v. EMC Telecom Corp., No. CV-09-2552-PHX-GMS, 2010 WL 2490002, at *4 (D. Ariz. June 16, 2010) (quoting Legacy Wireless Servs., Inc. v. Human Capital, L.L.C., 314 F. Supp. 2d 1045, 1054 (D. Ore. 2004)). "The situation is materially different, however, when . . . a signatory seeks to invoke an arbitration clause against a *non-signatory*." Id. (internal modifications and quotation marks omitted); see Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 445 (3d Cir. 1999) (declining to extend Ninth Circuit's reasoning in Letizia to situation where party sought to apply arbitration clause against an agent who had not signed the underlying agreement). In Peterson, the court held that even though the individual defendants were allegedly the agents and employees of the corporate defendant, they were acting on behalf of the corporate defendant—a disclosed principal—when they negotiated an agreement with an arbitration clause, and there was no evidence that they had agreed to be bound by the corporation's contracts. See 2010 WL 2490002, at *4 ("[U]nless otherwise agreed, an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract." (citation and internal quotation marks omitted)); see also Thomson, 64 F.3d at 777–78 (holding that non-signatory parent corporation could not be compelled to arbitrate under agency principles based on earlier arbitration agreement between its subsidiary and subsidiary's supplier even though claim against parent arose out of relationship between subsidiary and supplier). Here, the Bank—the signatory—wants to compel InfoSpan—the nonsignatory—to arbitrate. Unlike in Peterson, InfoSpan did not negotiate or sign the Agreement on behalf of InfoSpan (Gulf), and the Court finds that the

---

 [4]At oral argument on December 6, 2012, it became clear that certain licensing fees and reimbursements which InfoSpan (Gulf) paid to InfoSpan were separate and distinct from InfoSpan (Gulf)'s agreement with the Bank. (See Scudder Decl., pp. 2, 8.) Those payments were neither mentioned nor required under the InfoSpan (Gulf)–Bank Agreement, and thus they stand as third-party arrangements which InfoSpan could have made with any vendor or licensor. They do not amount to InfoSpan's exploitation of the Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
|---|---|---|---|

| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC |
|---|---|

record does not support a conclusion that InfoSpan otherwise became a party to the contract due to its affiliation with InfoSpan (Gulf) and the agreement that InfoSpan would provide support and transactional services for the Bank's use of SpanCash technology. (See Compl. ¶ 12, 32); Bel-Ray Co., 181 F.3d at 445 ("[T]he only other way we understand that an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority."). Therefore, InfoSpan is not bound to arbitrate under agency principles.

Accordingly, although the arbitration provision has not been waived and InfoSpan (Gulf) would have to submit to arbitration of its claims, InfoSpan's tort claims are not subject to arbitration and therefore the Court **DENIES** the Bank's motion to compel arbitration of those claims.

### B.  InfoSpan (Gulf) as a Necessary Party

As noted earlier, Plaintiffs state that they will voluntarily dismiss InfoSpan (Gulf)'s claims should the Court find that InfoSpan's claims, standing alone, are not subject to arbitration. Assuming that Plaintiffs proceed to move to dismiss InfoSpan (Gulf), the Court nonetheless addresses whether InfoSpan (Gulf) is an indispensable party under Fed. R. Civ. P. 19. If so, the Court must address whether it has subject matter jurisdiction over InfoSpan (Gulf)'s claims.

A court may, on just terms, dismiss a party whose presence in the litigation destroys jurisdiction if the party is dispensable and there would be no prejudice to the parties. Fed. R. Civ. P. 21; Continental Airlines, Inc. v. Goodyear Tire & Rubber Co., Inc., 819 F.2d 1519, 1524 (9th Cir. 1987); In re Lorazepam & Clorazepate Antitrust Litig., 631 F.3d 537, 542 (D.C. Cir. 2011) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830–32 (1989)). A party may be indispensable if "complete relief among existing parties" cannot be granted in its absence." Fed. R. Civ. P. 19(a)(1)(A). A "court asks whether the absence of the party would preclude the district court from fashioning meaningful relief." Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 879 (9th Cir. 2004). A party also may be indispensable if it "claims an interest relating to the subject of the action" and its "absence may (I) . . . impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
|---|---|---|---|

| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC |
|---|---|

because of the interest." Fed. R. Civ. P. 19(a)(1)(B). "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." Cachil Dehe Band of Wintun Indians of the Colusa Comm. v. Cal., 547 F.3d 962, 976 (9th Cir. 2008).

In Nike, Nike brought claims for breach of contract, fraud, and tortious interference with prospective advantage based on the alleged breach of contracts between the defendant and Nike International, Ltd. ("NIL"), a wholly-owned subsidiary of Nike. The Ninth Circuit reasoned that before NIL assigned its claims to Nike, NIL was indispensable because the contract was between the defendants and NIL; the signatories represented the defendants and NIL; the licensing agreement authorized the use of trademarks owned by NIL; and NIL notified the defendants of its intent to terminate the licensing agreements. 20 F.3d at 991, 991 n.7. Thus, every claim by Nike was premised on an alleged wrong towards NIL. The Court ordered dismissal, however, because the assignment of NIL's rights under the contract to Nike prior to the lawsuit was a collusive attempt to maintain diversity jurisdiction. Id. at 993.

First, the Court finds that meaningful relief can be fashioned between InfoSpan and the Bank without InfoSpan (Gulf)'s presence.[5] As the Court has found, unlike in Nike, InfoSpan's tort claims do not depend on the existence, validity, or breach of any contractual obligations between InfoSpan (Gulf) and the Bank. Further, the relief InfoSpan seeks, including an injunction from further use or dissemination of SpanCash, the return of the software, and damages, is determinable without the presence of InfoSpan (Gulf)'s claims. (See Compl. ¶ 169.) Second, leaving InfoSpan (Gulf) out of this litigation would not prejudice its ability to contest the breach of contract claims. Again, the Court does not believe that InfoSpan's tort claims require adjudicating the parties' rights under the Agreement, even if there are some overlapping evidentiary showings; InfoSpan does not seek to enforce any obligations the Bank would have to it that solely arise from the Agreement. Cf. Charles Alan Wright & Arthur Miller, 7 Fed. Prac. & Proc. Civ. § 1623 (3d ed.) ("When several tort actions instituted by different persons arise out of the same incident, the complaining parties need not be joined."). Moreover, because InfoSpan and InfoSpan (Gulf) are related, InfoSpan has an additional incentive to ensure that its actions protect InfoSpan (Gulf)'s separate interests. See Blumberg v. Gates, 203 F.R.D. 444, 447 (C.D. Cal. 2001). Third, the Bank is not at a "substantial risk of

---

[5]The Bank makes no argument under Rule 19(a)(1)(A).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
|---|---|---|---|
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

incurring . . . double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). If InfoSpan prevails on the independent tort claims, it would not be able to procure damages or specific performance under the Agreement. The relief for the tort claims is exclusive of the relief for the contract claims. Nor would the Bank be subject to inconsistent obligations; there is no reason that it could not necessarily comply with an order finding it liable to InfoSpan and a decision finding it not liable to InfoSpan (Gulf). See Blumberg, 203 F.R.D. at 446 ("Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defendant against a party may be found liable to another party in a subsequent action arising from the same incident—i.e. a risk of inconsistent adjudications or results—does not necessitate joinder of all the parties into one action pursuant to Fed. R. Civ. P. 19(a)." (quoting Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3, (1st Cir. 1998)).

Therefore, InfoSpan (Gulf) is a dispensable party whose joinder is not required. At oral argument, Plaintiffs stated that upon entry of this Order, InfoSpan (Gulf) will move to voluntarily dismiss its claims. Accordingly, the Court need not reach the question of subject matter jurisdiction and **DENIES** the Bank's motion to dismiss for lack of subject matter jurisdiction, without prejudice.

### C. Forum Non Conveniens

The Bank has not shown the balance of private and public interest factors "strongly favor" trial in the UAE. Regarding the private interest factors, InfoSpan sufficiently allege that a few of its witnesses would be unable to travel to the UAE out of legitimate fear for their safety. (E.g., Scudder Decl. ¶¶ 38–41, Docket No 49-5; Bajwa Decl. ¶¶ 37–38, Docket No. 49-3.) Farooq Bajwa, for example, averred in his sworn declaration that a Bank representative threatened him, stating during a phone call, "If you ever come back to Dubai, you'll never leave alive," and asking, "How much do you love your family? How much do you love your life? Is it worth keeping control of SpanCash?" (Bajwa Decl. ¶ 38.) Additionally, much of the documentary and physical evidence Plaintiffs have maintained is in California. (Id. ¶ 25.) Virtually all relevant documents are in English because the parties conducted business exclusively in English. (Scudder Decl. ¶ 15; Bajwa Decl. ¶ 26.) In the UAE, all documents and testimony submitted to the courts must first be translated into Arabic. (Wolfson Decl. ¶¶ 36–39, Docket No. 49-11.) Thus, proceeding in the UAE would likely result in significant and unnecessary expenditures. The Bank does not present countervailing evidence that overcomes the strong

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-1062 JVS (ANx) | Date | December 7, 2012 |
| Title | InfoSpan, Inc. and InfoSpan (Gulf), Inc. v. Emirates NBD Bank PJSC | | |

presumption in favor of the present forum.

Regarding the public interest factors, the Bank points out that it would be burdensome to have this Court and a California jury adjudicate issues of UAE law (as designated under the arbitration clause of the Agreement), should any come up. However, because the only claims that will remain before the Court upon InfoSpan (Gulf)'s dismissal are InfoSpan's tort claims, the consideration is not weighty and does not weigh in the Bank's favor. Moreover, California maintains a strong interest in providing an effective means of redress for residents tortiously injured by an out-of-state actor and adjudicating such disputes. Panavision, 141 F.3d at 1323 (quoting Gordon v. Daily News, L.P., 95 F.3d 829, 936 (9th Cir. 1996)); CE Distrib., 380 F.3d at 1112. The Bank allegedly misappropriated technology developed and maintained in California, interjecting itself into the forum state's affairs. Thus, both parties present evidence of public interest factors in their favor. Therefore, the public interest factors do not strongly militate in factor of the Bank.

Accordingly, the Court **DENIES** the motion to dismiss for forum non conveniens.

IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to compel arbitration; **DENIES** the motion to dismiss for lack of subject matter jurisdiction, and **DENIES** the motion for forum non conveniens. This disposition is premised on Plaintiffs' representation that InfoSpan (Gulf) will be voluntarily dismissed in light of the Court's holding as to the arbitration of InfoSpan's tort claims.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | kjt | | |