BOIES, SCHILLER & FLEXNER LLP
William A. Isaacson (*admitted pro hac vice*)
wisaacson@bsfllp.com
David Boyd (*admitted pro hac vice*)
dboyd@bsfllp.com
Jonathan M. Shaw (*admitted pro hac vice*)
jshaw@bsfllp.com
5301 Wisconsin Ave., Suite 800
Washington, DC 20015
Telephone:   202-237-2727
Facsimile:    202-237-6131

David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Telephone:   310-752-2400
Facsimile:    310-752-2490

BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
Terry W. Bird (SBN 49038)
twb@birdmarella.com
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Telephone:   310-201-2100
Facsimile:    310-201-2110

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| InfoSpan, Inc.,<br><br>            Plaintiff,<br><br>    v.<br><br>Emirates NBD Bank PJSC,<br><br>            Defendant. | Case No.  8:11-CV-01062  JVS (ANx)<br><br>**INFOSPAN'S NOTICE OF MOTION AND MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY REGARDING DIRECTREMIT**<br><br>Date:  June 29, 2015<br>Time:  1:30 p.m.<br>Courtroom:  10C |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 29, 2015, at 1:30 p.m., or as soon thereafter as the matter can be heard, Plaintiff InfoSpan, Inc. ("Plaintiff" or "InfoSpan") will and hereby does move the Court for an order allowing InfoSpan to obtain limited discovery from Defendant Emirates NBD Bank PJSC ("Defendant" or "Emirates") regarding DirectRemit and requiring Defendant to produce the following:

1. The source code for the DirectRemit product, services, platform, software and/or applications (produced in the manner required under the Protective Order in this action).

2. Documents identified by the following two keyword searches, except for those protected by the attorney-client privilege or the work product doctrine:

    a. (DirectRemit <u>OR</u> "Direct Remit") <u>AND</u> (InfoSpan <u>OR</u> SpanCash)

    b. (DirectRemit <u>OR</u> "Direct Remit") <u>W/100</u> (PCMS <u>OR</u> NBDirect <u>OR</u> "NBD Direct" <u>OR</u> "Prepay Card" <u>OR</u> "Salary Card" <u>OR</u> "Payroll Card" <u>OR</u> MeMobile <u>OR</u> "SMS Banking" <u>OR</u> "Mobile Banking")

3. A supplemental response to Interrogatory No. 2 that identifies the individuals involved in the development of DirectRemit.

4. A supplemental response to Interrogatory No. 11 that identifies the dates (i.e., the time period) when DirectRemit was developed.

InfoSpan brings this motion pursuant to Rules 26 and 16 of the Federal Rules of Civil Procedure and Local Rule 7.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 26, 2015.  This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declaration of David Zifkin filed concurrently herewith, as well as all pleadings and papers on file in this action, and such additional evidence or argument that may be presented.

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1

Respectfully submitted,

2

3    Dated: June 1, 2015

BOIES, SCHILLER & FLEXNER LLP

4

By: /s/ David Zifkin

5

William A. Isaacson (*pro hac vice*)
David Boyd (*pro hac vice*)

6

Jonathan Shaw (*pro hac vice*)
David Zifkin (SBN 232845)

7

BIRD, MARELLA, BOXER, WOLPERT,

8

NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.

9

Terry W. Bird (SBN 49038)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................1

II.    RELEVANT BACKGROUND ......................................................3

    A.   DirectRemit Is A Money Transfer Platform That
         The Bank Launched In 2014. .............................................3

       1.  Pre-Motion for Summary Judgment Press Releases .................3

       2.  April 2015 Press Releases ...........................................3

    B.   The Bank Did Not Produce Information About
         DirectRemit During Discovery. .........................................4

    C.   InfoSpan's Discovery Called For Source Code, Documents,
         And Information Related To DirectRemit. .............................5

    D.   InfoSpan First Became Aware Of DirectRemit At
         The Fact Discovery Cutoff ...............................................6

III.    ARGUMENT ...............................................................................7

    A.   The Bank Failed To Comply With Its Obligation To
         Supplement Discovery Responses Under Rule 26(e). ...............7

    B.   As A Result, The Court Should Order The Bank To
         Produce Certain Materials Related To DirectRemit. .................9

    C.   The Court May Award This Relief, Even Though
         The Discovery Cut-Off Has Passed. ..................................10

       1.  The Motion Is Timely Because The Bank Violated Rule 26(e). ...........10

       2.  Rule 16(b) "Good Cause" Has Been Shown...........................10

IV.    CONCLUSION ..........................................................................13

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

# TABLE OF AUTHORITIES

**CASES**

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .................. 10

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
 272 F.R.D. 350 (W.D. N.Y. 2011) .................................................................. 2, 10

*Woods v. Google, Inc.*, No. C11-01263-EJD (HRL),
 2014 WL 1321007 (N.D. Cal. Mar. 28, 2014) ...................................................... 7

**RULES**

Federal Rule of Civil Procedure 16(b) .................................................................. 2,10

Federal Rule of Civil Procedure 26(e)............................................................... 1, 7, 8, 9

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(e) ............ 8

## I.    INTRODUCTION

In its May 6, 2015 Order, the Court authorized InfoSpan to submit a "motion to reopen discovery" concerning Emirates Bank's DirectRemit product, service, and applications.  Dkt. 357, p. 11 n.10.  InfoSpan now brings this motion to require the Bank to produce certain information about DirectRemit, including source code and limited documents.  The Court should reopen limited discovery to require the Bank to produce these materials because it failed to disclose on a timely basis a new international remittance service called DirectRemit and to supplement its discovery responses as required under Federal Rule of Civil Procedure 26(e).

The Bank then affirmatively introduced information about DirectRemit in its motion for summary judgment, admitting that DirectRemit was developed "in-house."  Thereafter—and after InfoSpan filed its opposition to that motion—the Bank issued press releases containing new and important admissions about DirectRemit that evidence the Bank's improper use of InfoSpan's trade secrets.  Moreover, those press releases admit (i) that "the DirectRemit platform" is a remittance platform and service that employs mobile, online and ATM banking channels; and (ii) that it was launched in 2014.[1]

Despite DirectRemit's obvious relevance and its responsiveness to InfoSpan's discovery, the Bank failed to supplement its discovery responses even to identify DirectRemit as a relevant or responsive product.  The Bank failed to identify DirectRemit even in its supplemental response to an interrogatory that required it to identify its platforms and services related to remittances, mobile banking and/or prepaid cards—and to which the Bank responded by identifying each of the other relevant products.  As a result of this and other discovery lapses, the Bank (i) failed to put InfoSpan on notice of the DirectRemit product during fact

---

[1] The Bank's motion for summary judgment filings asserted incorrectly that DirectRemit was launched in 2013.

1                    INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1  discovery, which closed on December 15, 2014; and (ii) failed to produce

2  responsive documents, source code, and information about DirectRemit.

3  　　　Although the discovery cut-off has passed, this motion is timely because

4  motions related to violations of Rule 26(e) may be brought after the discovery cut-

5  off in a scheduling order.  *E.g.*, *Star Direct Telecom, Inc. v. Global Crossing*

6  *Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D. N.Y. 2011) (discovery motion "is not

7  untimely because the duty to supplement continues even following the close of

8  discovery").  In any event, InfoSpan can easily satisfy the good cause requirement

9  of Rule 16(b) under the circumstances presented here.  InfoSpan could not

10  reasonably meet the December 26, 2014 discovery motion deadline because the

11  Bank did not produce any meaningful information about DirectRemit during

12  discovery.  Moreover, InfoSpan first learned of DirectRemit at the fact discovery

13  deadline and did not learn essential facts about it until the Bank filed its motion for

14  summary judgment on January 13, 2015 and issued the new press releases in April

15  2015.

16  　　　Because this is a motion to allow limited discovery after the cutoff and

17  because of the potential relevance of Rule 16(b) to this motion, InfoSpan is required

18  to bring this motion pursuant to Local Rule 7—and not before the assigned

19  magistrate.[2]  Under these circumstances, InfoSpan respectfully requests that the

20  Court decide all of the issues presented herein, including its request for an order

21  requiring the Bank to produce the materials identified in Section III.B below.  Such

22  a decision will further the efficient resolution of these issues, all of which are

23  related and overlapping.

24

25

26

27  [2] To facilitate the parties' meet and confer about this motion and to avoid any

28  dispute about L.R. 37's letter requirement, InfoSpan sent the Bank's counsel a L.R. 37 letter before the conference occurred.  Zifkin Decl., Exh. A.

1

## II.    RELEVANT BACKGROUND

### A.    DirectRemit Is A Money Transfer Platform That The Bank Launched In 2014.

#### 1.    Pre-Motion for Summary Judgment Press Releases

Emirates Bank announced DirectRemit in a May 4, 2014 press release, which describes it as "a first-of-its-kind remittance service" for non-resident Indians that work in the UAE.  Zifkin Decl., Exh. B.  On December 3, 2014, the Bank announced the extension of DirectRemit to the Philippines.  *Id.*, Exh. C.[3]

#### 2.    April 2015 Press Releases

After InfoSpan filed its opposition to the Bank's motion for summary judgment on March 17, 2015, the Bank issued additional press releases that provided significant new information about its DirectRemit product.  Zifkin Decl., Exhs. D, E.  As detailed in Section III.C.2. below, these new facts are particularly relevant because they evidence the Bank's use of InfoSpan's trade secrets.

On April 4, 2015, the Bank issued a press release announcing the extension of DirectRemit to allow customers "to remit money to Pakistan."  *Id.*, Exh. D.  It describes DirectRemit as a "money transfer platform" that "is seen as a key component of Emirates NBD's value proposition to its account holders," which has been "extremely successful" since "the launch … in 2014."  *Id.*[4]  The press release contains statements from Suvo Sarkar—one of the Bank's summary judgment declarants and 30(b)(6) deposition witnesses—explaining that DirectRemit "enables [customers] not only to transfer funds to their beneficiaries back home almost instantly, but also to pay their bills, insurance premiums and loan payments,

---

[3] As detailed below, due to the Bank's discovery lapses, InfoSpan did not become attuned to information about DirectRemit on the Bank's website, such as the May 4, 2014 press release, until mid-December 2014.

[4] These press releases contradict the Bank's assertion on summary judgment that DirectRemit was launched in 2013.  Dkt. 258-1, ¶10; Dkt. 260, ¶10.e; Dkt. 261, ¶9.d.

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1  through their bank accounts in Pakistan." *Id.*  In the press release, Mr. Sarkar also

2  stated that "[r]emittances by the Pakistani expatriate population in the UAE is the

3  second largest source of remittance inflow to Pakistan, so the introduction of the

4  DirectRemit service is an excellent value proposition to our Pakistani expatriate

5  customers." *Id.*  Finally, this press release discloses that the Bank had partnered

6  with Faysal Bank to be a receiving bank in Pakistan, thus allowing "customers to

7  perform Pakistani Rupee remittances to Faysal Bank accounts in Pakistan." *Id.*

8  On April 19, 2015, Emirates Bank announced another extension of "[t]he

9  DirectRemit platform" through the addition of ICICI Bank as a receiving bank in

10  India.  Notably, this press release states: "Customers can avail of this service

11  through internet banking, mobile banking and ATMs of Emirates NBD.  Customers

12  are required to complete a simple registration process to add the ICICI Bank

13  beneficiary."  *Id.*, Exh. E.

14  **B.    The Bank Did Not Produce Information About DirectRemit**

15  **During Discovery.**

16  Although the Bank submitted declarations about DirectRemit in support of its

17  motion for summary judgment,[5] it did not produce meaningful information,

18  documents, or source code about it during discovery.  InfoSpan has only located

19  one document produced by the Bank that even mentions DirectRemit by name.

20  Zifkin Decl., ¶7, Exh. F.  That 123-page document—which includes the phrase

21  "DirectRemit India" in passing on pages 70 and 76—was produced in hard copy at

22  the Bank's 30(b)(6) deposition on December 9, 2014, less than one week before the

23  discovery cutoff.  *Id.*

24  The Bank's disclosures about DirectRemit were somewhat more substantial

25  when it filed its motion for summary judgment on January 13, 2015.  *See* Dkt. 258,

26  p. 16 n.3 of 40; Dkt. 258-1, ¶10; Dkt. 260, ¶10.e; Dkt. 261, ¶9.d.  Among other

28  [5] Dkt. 260, ¶ 10.e.; Dkt. 261, ¶ 9.d; *see also* Dkt. 258-1, ¶ 10.

1   things, the Bank disclosed that DirectRemit was developed "in-house." *E.g.*, Dkt.
2   260, ¶10; Dkt. 261, ¶10.e; Dkt. 262, ¶9.d.

3       **C.    InfoSpan's Discovery Called For Source Code, Documents,**
4           **And Information Related To DirectRemit.**

5       In March 2013 and January 2014, InfoSpan issued document requests and
6   interrogatories that sought source code, documents, and information concerning the
7   Bank's proposed and/or implemented products, services, platforms, software, and
8   applications (collectively, "products") related to remittances, mobile banking,
9   and/or prepaid cards.  Zifkin Decl., Exh. G (Requests for Production, served on
10  March 22, 2013); *id.*, Exh. H (Interrogatories, served on January 17, 2014).  For
11  example, Interrogatory No. 1 required the Bank to identify such products and
12  Interrogatory Nos. 2 and 11 asked for related information.  *Id.*, Exh. H, pp. 5, 7.
13  Similarly, InfoSpan's Request for Production Nos. 3-10 and 27-34 called for the
14  Bank's source code and documents related to all such products.  *Id.*, Exh. G, pp. 7-9
15  & 12-13.

16      The Bank's source code, documents, and information about DirectRemit are
17  plainly responsive to these requests because, as the April 2015 press releases admit,
18  DirectRemit is a remittance platform and service that employs multiple channels,
19  including mobile banking and ATM banking (which, of course, involves prepaid
20  cards).  *Id.*, Exh. E; *see also id.*, Exh. D.  Moreover, the Bank knew (or should have
21  known) that this discovery called for that information, as reflected by the fact that it
22  responded to the discovery by producing information, documents, and source code
23  related to each of the other relevant products listed in its summary judgment
24  motion.  *Id.*, Exh. I, pp. 5-8 (First Suppl. Resp. to Rog No. 1); *id.*, Exh. J, pp. 6-7 &
25  9-11 (Second Suppl. Resp. to Rog Nos. 2 & 11); *id.*, Exh. K, pp. 4-8 (Third Suppl.
26  Resp. to Rog Nos. 2 & 11); *id.*, ¶13 (the Bank produced over 1,800 documents and
27  source code for the other products).

28

In response to InfoSpan's interrogatories, the Bank identified the products listed in its motion for summary judgment papers, ***except*** for DirectRemit.  Zifkin Decl., Exh. I, pp. 6-8; *id.*, Exh. J, pp. 6-7 & 9-11; *id.*, Exh. K, pp. 4-8.   In response to InfoSpan's documents requests about such products, the Bank produced source code in 2013 about the other products that had been developed "in-house," but it ***never*** supplemented its production with the source code for DirectRemit.  *Id.*, ¶13; *see* Dkt. 306-3, ¶¶3-4.  In response to those requests, the Bank also produced over 1,800 documents about the other products, but it ***never*** supplemented its productions with documents about DirectRemit.  Zifkin Decl., ¶13.

### D.   InfoSpan First Became Aware Of DirectRemit At The Fact Discovery Cutoff.

InfoSpan did not learn of the Bank's DirectRemit product until mid-December 2014.  Zifkin Decl., ¶14.  While InfoSpan reviewed the Bank's press releases and website at the outset of this litigation and in connection with its initial expert reports served in December 2013, it did not anticipate that the Bank would fail to identify a plainly relevant product in discovery responses that purported to identify all such products and to contain information and documents about them. *Id.*  Thus, InfoSpan did not discover information about DirectRemit on the Bank's website until mid-December 2014, during a review of the Bank's website in connection with a fact and cite checking project.  *Id.*

Prior to that time, on October 23, 2014, InfoSpan had asked that its consulting expert be given access to the Bank's existing source code production. *Id.*, Exh. L, at p. 3.[6]  That request—made in connection with reply expert reports due on December 29, 2014 (*id.*, ¶15)—was still pending when InfoSpan learned of

---

[6] Under the Protective Order (and consistent with normal practice in cases involving source code), the Bank's source code production was to be maintained and available on a secure computer at opposing counsel's offices.  Dkt. 128, ¶8(c).

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1   DirectRemit in mid-December 2014.[7]  *Id.*, ¶15; *id.*, Exh. L, at pp. 1-3; *id.*, Exh. M,

2   at pp. 6-10.  At that time, the parties were already corresponding about whether the

3   Bank would supplement its existing source code production with additional files

4   from its Visual Source Safe Repository (VSS).[8]  *Id.*; *see also id.*, ¶16.  Although

5   InfoSpan did not know whether DirectRemit had been developed "in-house," its

6   counsel promptly requested that the Bank also supplement its production with any

7   source code for DirectRemit.  *Id.*, ¶ 16; *id.*, Exh. M, at p. 8.  The Bank initially

8   indicated that it would supplement its source code production (*id.*, Exh. M, at pp. 4,

9   6 & 9), but then it reversed course and refused to supplement that production in

10  February 2015.  *Id.*, ¶¶16-17; *id.*, Exh. N, at p. 2.

11  **III.   ARGUMENT**

12          **A.   The Bank Failed To Comply With Its Obligation To**

13                 **Supplement Discovery Responses Under Rule 26(e).**

14          Under Federal Rule of Civil Procedure 26(e), a party that has responded to an

15  interrogatory or request for production "must supplement or correct its disclosure or

16  response … in a timely manner if the party learns that in some material respect the

17  disclosure or response is incomplete or incorrect, and if additional or corrective

18  information has not otherwise been made known to the other parties during the

19  discovery process or in writing."  This duty to supplement or correct earlier

20  discovery responses continues even after the close of scheduled discovery.  *E.g.*,

21  *Woods v. Google, Inc.*, No. C11-01263-EJD (HRL), 2014 WL 1321007, at *4 (N.D.

22  Cal. Mar. 28, 2014) ("The Court can definitively state that the Rule 26(e) duty to

---

[7] Contrary to its suggestion at the summary judgment hearing, the Bank did not make the "existing" source code production available at that time because it was no longer maintained and available at its counsel's offices. Zifkin Decl., ¶17, Exh. L, at p. 1; Exh. M.  The Bank did not make that source code available until February 2015; and then it allowed only one day of review, refused InfoSpan's request for an additional day of review by its expert, and refused to print two files and one screen shot in accordance with the Protective Order.  *Id.*, ¶ 17; *id.*, Exhs. M, N.

[8] The Bank's failure to produce certain VSS files and information for other products is not the subject of this motion, but is described in detail in InfoSpan's summary judgment objections.  Dkt. 306-4, pp. 4-9 of 29.

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1   supplement or correct incomplete or incorrect responses does, in fact, extend

2   beyond the discovery cutoff"); Advisory Committee Notes to 1993 Amendments to

3   Fed. R. Civ. P. 26(e).

4          Emirates Bank violated Rule 26(e) by failing to supplement its production

5   with information, documents, and source code about the DirectRemit platform and

6   service it launched during this litigation.  *See* Section II.C, *supra*.  Indeed, the Bank

7   did not even identify DirectRemit in response to an interrogatory that specifically

8   required it to identify such products, services and platforms—including in a

9   supplemental response served after DirectRemit's launch that identified all of the

10  other relevant products listed in its motion for summary judgment.  Zifkin Decl.,

11  Exh. I, at pp. 5-8.  Significantly, this and other discovery responses establish that

12  the Bank knew (or should have known) that InfoSpan's interrogatories and

13  document requests called for information, documents, and source code about

14  DirectRemit.  *Id.*; *see also id.*, ¶13; *id.*, Exh. J, pp. 6-7 & 9-11; *id.*, Exh. K, pp. 4-8.

15  And the Bank's failure to supplement its discovery responses is particularly

16  egregious because the Bank affirmatively advanced and relied on testimony about

17  DirectRemit in its motion for summary judgment.[9]

18         Moreover, the apparent knowing and intentional nature of the Bank's

19  violations of Rule 26 is further evidenced by the fact that (a) it said that it would

20  supplement its source code, but then refused to do so in February 2015 (Zifkin

21  Decl., ¶¶16-17; *id.*, Exh. M, at pp. 5, 6, & 9); and (b) even when it misleadingly

22  stated that it would supplement its source code production after the December 15,

23  2014 discovery cutoff (*id.*), the Bank said it would only "make available whatever

24

25

26  [9] Even if InfoSpan's document requests had not called for source code and
    documents about DirectRemit as they did, InfoSpan would still be entitled to those
27  materials at this time because the Bank's failure to identify DirectRemit in its
    interrogatory responses prejudiced InfoSpan and its ability to obtain such
28  discovery.

source code was retained as of the time InfoSpan filed this action," (*id.*, Exh. M, at p. 9), which, of course, is contrary to the plain language of Rule 26(e).

### B. As A Result, The Court Should Order The Bank To Produce Certain Materials Related To DirectRemit.

The Court should require the Bank to produce the following information and materials within 21-days of the Court's Order:[10]

1. The source code for the DirectRemit product, services, platform, software and/or applications (produced in the manner required under the Protective Order in this action).[11]

2. Documents identified by the following two keyword searches, except for those protected by the attorney-client privilege or the work product doctrine:[12]

    c. (DirectRemit OR "Direct Remit") <u>AND</u> (InfoSpan OR SpanCash)

    d. (DirectRemit OR "Direct Remit") <u>W/100</u> (PCMS <u>OR</u> NBDirect <u>OR</u> "NBD Direct" <u>OR</u> "Prepay Card" <u>OR</u> "Salary Card" <u>OR</u> "Payroll Card" <u>OR</u> MeMobile <u>OR</u> "SMS Banking" <u>OR</u> "Mobile Banking")

3. A supplemental response to Interrogatory No. 2 that identifies the individuals involved in the development of DirectRemit.

4. A supplemental response to Interrogatory No. 11 that identifies the dates (i.e., the time period) when DirectRemit was developed.

This requested relief is narrowly tailored, and the Bank has no basis to claim any prejudice, especially with a November 10, 2015 trial date.

---

[10] Depending on the contents of any such discovery, InfoSpan's experts may need to supplement their reports. If there is not sufficient time to do so under Rule 26(e)(2), InfoSpan will confer with opposing counsel about a schedule for such supplements.

[11] InfoSpan previously accommodated the Bank by allowing it to make source code available at its counsel's offices via a VPN connection, (Zifkin Decl., ¶18), rather than on a computer that is *not* connected to the Internet as required under the Protective Order. Dkt. 128, ¶8.c. The Bank should *not* be permitted to employ a VPN connection for this production because it proved to be problematic and inefficient. Zifkin Decl., ¶18.

[12] The Bank may protect any confidential information by designating documents "Confidential" or "Highly Confidential" under the Protective Order. Dkt. 128.

    INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

**C.** **The Court May Award This Relief, Even Though The Discovery Cut-Off Has Passed.**

**1.** **The Motion Is Timely Because The Bank Violated Rule 26(e).**

The Court's Scheduling Order provides that "discovery motions respecting the inadequacy of responses to discovery must be filed and served not later than ten (10) days after the discovery cut-off," (Dkt. 123, p. 3), and thus established that the deadline for such motions was December 26, 2014.[13]  Courts permit motions after such deadlines where, as here, the non-movant has failed to comply with its obligations to supplement discovery responses pursuant to Rule 26(e).  *E.g.*, *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D. N.Y. 2011) (discovery motion "is not untimely because the duty to supplement continues even following the close of discovery") (citations omitted).

**2.** **Rule 16(b) "Good Cause" Has Been Shown.**

InfoSpan also has demonstrated good cause under Rule 16(b) for the Court to grant this motion.  Rule 16(b)'s "good cause standard" primarily considers the diligence of the moving party.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Although the existence or degree of prejudice to the party opposing modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification").  "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Id.* (citations omitted).

In this case, InfoSpan could not reasonably meet the December 26, 2014 discovery motions deadline because the Bank failed to provide information about DirectRemit during discovery.  As a consequence of the Bank's discovery lapses, InfoSpan could only have learned of DirectRemit through Internet searches.  While InfoSpan reviewed the Bank's press releases and website at the outset of the

---

[13] The discovery cutoff was December 15, 2014 (Dkt. 202), but December 25, 2014 was a court holiday.

INFOSPAN'S NTC OF MOTION AND MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY

litigation and in connection with its initial expert reports served in December 2013, it did not anticipate that the Bank would fail to identify a relevant product in discovery that plainly called for such information and it did not learn of the existence of DirectRemit until the discovery deadline.  Zifkin Decl., ¶14.

Furthermore, InfoSpan could not reasonably meet the discovery motion deadline after learning of DirectRemit in mid-December 2014 because (i) it still lacked facts material to any such motion and, more fundamentally, to determining whether or not such a motion was warranted; and (ii) it was reasonably occupied with work that needed to be completed by the December 29, 2014 deadline for InfoSpan's expert reply reports.  Zifkin Decl., ¶14.  For example, the Bank did not disclose that it developed DirectRemit "in-house" until it filed its motion for summary judgment on January 13, 2015.  Dkt. 260, ¶10; Dkt. 261, ¶10.e; Dkt. 262, ¶9.d.  This belated disclosure was significant because the Bank's supplemental response to Interrogatory No. 1 had indicated that it maintains source code for those products that it developed "in-house," but often does not possess source code for products developed by third parties.  Zifkin Decl., Exh. I.

Thus, only in January 2015 did it become clear that DirectRemit source code should be available for production.  InfoSpan nonetheless showed reasonable diligence by promptly asking the Bank to supplement its source code production with any code for DirectRemit.  *Id.*, ¶16; *id.*, Exh. M, at pp. 5 & 8.  The Bank initially indicated that it would so, and did not refuse until February 2015.  *Id.*, ¶¶16-17; *id.*, Exh. M, at pp. 5, 6, & 9; *id.*, Exh. N.

InfoSpan also was not aware of additional facts that are material to this motion until the Bank issued its April 2015 press releases.  Those press releases show that the Bank has continued to expand its DirectRemit product and to create new, responsive documents about it.  More importantly, they contain new evidence showing that the Bank used InfoSpan's trade secrets in its research and development of DirectRemit, and thus establish that discovery about DirectRemit is

INFOSPAN'S NTC OF MOTION AND MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY

1    both relevant and warranted.

2         For example, the Bank's April 2015 announcement that it has partnered with

3    Faysal Bank as the receiving bank for DirectRemit in Pakistan, (Zifkin Decl., Exh.

4    D, at p. 1), is significant because Faysal Bank was one of InfoSpan's strategic

5    remittance and m-commerce partners for the SpanCash project and because

6    InfoSpan had provided Emirates Bank with confidential information about this

7    strategic relationship and had made related introductions.  *Id.*, Exh. O at

8    EM003804.  Emirates Bank knew that information concerning InfoSpan's strategic

9    partners was confidential trade secret information.[14]  Moreover, the Bank's

10   announcement that such "remittances are made in Pakistani Rupee" to Faysal Bank

11   accounts in Pakistan, (*id.*, Exh. D, at p. 1), is relevant because InfoSpan's exchange

12   rate features were an important part of SpanCash.  *See*, *e.g.*, Dkt. 306-1, Exh.148

13   (Goldberg Report), ¶13 ("the SpanCash system automatically converts the source

14   currency into the destination currency using current exchange rate information").

15        The April 2015 announcement that "[c]ustomers can avail of this

16   [DirectRemit] service through internet banking, mobile banking, and ATMs of

17   Emirates NBD," (Zifkin Decl., Exh. E), is also significant because it shows that

18   DirectRemit, like SpanCash, employs multiple channels for remittances, including

19   through a customer's use of prepaid or stored value cards at ATMs, of mobile

20   devices, and of the internet.[15]  In the April 4 press release, one of the Bank's

21   summary judgment declarants and 30(b)(6) deposition witnesses further admitted

22

23   _____

24   [14] The three other announced receiving bank partners for DirectRemit also had ties
     to the SpanCash project:  HDFC Bank was one of InfoSpan's strategic partners for
     the SpanCash project (Zifkin Decl., Exh. P; Dkt. 306-1, Exh. 170); Banco De Oro

25   was involved with a pilot project associated with SpanCash (Dkt. 306-1, Exh. 11 at
     EM009106; *id.*, Exh. 169); and ICICI Bank had a confidentiality agreement and

26   discussions with InfoSpan related to SpanCash.  Zifkin Decl., Exh. Q.

27   [15] It is worth noting that the Bank's summary judgment argument that SpanCash
     was not intended for its Bank account holders is belied by its own documents.  Dkt.

28   306-1, Exh. 14 at EM009087 (stating that SpanCash was intended for both "blue
     collar workers" and "our regular customers").

                              12        INFOSPAN'S NTC OF MOTION AND MOTION FOR
                                        LEAVE TO OBTAIN LIMITED DISCOVERY

Case 8:11-cv-01062-JVS-AN   Document 364   Filed 06/01/15   Page 18 of 19   Page ID #:11365


1  that DirectRemit, like SpanCash, provides additional financial services, including

2  bill payments.  *Id.*, Exh. D.  The April 2015 press releases describe the

3  "DirectRemit *platform*" as "a money transfer platform" (*id.*, Exhs. D, E) that is

4  more like the SpanCash platform than what the Bank said about DirectRemit in its

5  summary judgment filings—which inaccurately portrayed DirectRemit as a minor

6  extension of BankNet.  *See* Dkt. 260, ¶10; Dkt. 261, ¶10.e; Dkt. 262, ¶9.d.

7        The critical new facts disclosed in January and April 2015 are so significant

8  that they would justify the relief requested in this motion even absent the Bank's

9  discovery lapses.  While InfoSpan also believes that the new facts disclosed in

10  April 2015, together with the Bank's practice of "leveraging" InfoSpan's trade

11  secrets as part of its research and development of products, are sufficient to justify

12  reconsideration of the Court's finding about DirectRemit in its May 6, 2015 Order,

13  it would be more efficient if InfoSpan moves on that issue after any ordered

14  discovery has occurred.[16]

15  **IV.   CONCLUSION**

16        For the foregoing reasons, InfoSpan respectfully requests that the Court enter

17  an Order granting this motion and the relief requested in Section III.B., which is

18  also set forth in the accompanying proposed order.

19                                Respectfully submitted,

20

21  Dated: June 1, 2015             BOIES, SCHILLER & FLEXNER LLP

22

23                             By:  /s/  David Zifkin
                           William A. Isaacson (*pro hac vice*)
                           David Boyd (*pro hac vice*)

24                             Jonathan Shaw (*pro hac vice*)
                           David Zifkin (SBN 232845)

25

26                             BIRD, MARELLA, BOXER, WOLPERT,

27  _____

28  [16] If it deems the circumstances appropriate, the Court, of course, may exercise its inherent powers to *sua sponte* reconsider its prior ruling about DirectRemit and reverse it.

INFOSPAN'S NTC OF MOTION AND MOTION FOR
LEAVE TO OBTAIN LIMITED DISCOVERY

1

NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.

2

Terry W. Bird (SBN 49038)

3

Attorneys for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28